MALDONADO LAW, PLLC
DAVID M. MALDONADO
210 N. Higgins, Suite 226
Missoula, MT 59802
maldonadolaw@406justice.com
Phone: (406) 552-4653

*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>REX WU, JR.,<br>Defendant. | Cause No. CR 25-19-BU-DLC<br><br>**DEFENDANT'S SENTENCING<br>MEMORANDUM** |

Defendant, Rex Wu Jr., by and through counsel of record, David M. Maldonado of Maldonado Law, PLLC, respectfully files this Memorandum in aid of sentencing. Based on the aforementioned, Defense respectfully requests the Court impose a non-custodial sentence with a period of three (3) years supervised release. Support Letters have all been previously filed with the Court. Attached to this Sentencing Memorandum in support are the following: (1) charging documents and judgments in other cyberstalking cases resulting in supervised release.

## PROCEDURAL OVERVIEW

In 2023, Rex Wu Jr. (hereafter "Wu"), was an engineering student at Montana State University. In addition, he was the president of the Chinese Cultural Club. Wu is of Cantonese descent. During this time Wu learned that certain organizations had been referring to the Covid Virus as the China Virus. Up to this point, Wu had never been in trouble, was pursing a difficult major, and was

actively involved in campus activism.  That would change. Wu would be the target of the investigation for electronic communications containing harassing and threatening content at a student that confided in him about problems on campus. He hid his identity and pretended to harass or threaten people he actually supported. Wu acted alone and concocted a misguided plan to raise awareness on campus for wrongs that he perceived were occurring and in doing so he clearly hurt a person that sought out his help.   When the FBI interviewed him, he would admit to what he did.

Wu waived grand jury and was charged by Information on or about June 17, 2025 with one count of Cyberstalking in violation of 18 U.S.C. §§ 2261(A)(2)(B) and 2261(b).

The parties entered into a plea agreement and Wu pled guilty on July 9, 2025 where the government made an offer of proof. (D.C. Doc 5).

## OBJECTION TO PSR

Wu made several objections to the Presentence Investigation Report ("PSR"). Each is addressed in turn.

Defense Objection 1-withdrawn.   The basis is in the Government's sentencing memorandum, it will not rely upon this information and clearly states it does not possess additional information to substantiate or dispel this assertion. Because the Government is not relying upon the facts to impact the guideline range, defense withdraws objection.

Defense Objection 2-withdrawn.  The Government again concedes it does not

have information to substantiate or dispel this claim and it is not relying on it as part of a guideline calculation.

Defense Objection #3-withdrawn.   The Government accurately describes defense's objection as to form that it was under other criminal conduct portion of the PSR when Wu has no criminal history. The Government is not relying upon this for a guideline calculation, so defense withdraws its objection.

Defense Objection #4. The defense objects to the application of the two-level "pattern of activity" enhancement at ¶ 62. There is generally a prohibition against double counting.  For example, Application Note 4 to § 2K2.4 generally prohibits applying specific offense characteristics for firearms or explosives to an underlying offense if the defendant is also convicted under 18 U.S.C. § 924(c), a statute that already accounts for the firearm use. There is no distinct harm from the conduct in the offer of proof and therefore there is no enhancement. The defense's position is that the Offer of Proof (D.C. Doc 5) to which Wu entered into the plea agreement substantially, if not entirely, cover the conduct from even before that identified in the PSR.  The PSR indicates from March but the Offer of Proof stems back to February and covers through November of 2024.  Therefore, the Offer of Proof established the elements and conduct of the offense of Cyberstalking to establish guilt and the enhancement would be double counting.

Under USSG § 2A6.2(b)(1), "If the offense involved one of the following aggravating factors: …(E) a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim, increase by 2 levels." The commentary to the guideline states, "In determining whether subsection (b)(1)(E) applies, the

court shall consider, under the totality of the circumstances, any conduct that occurred prior to or during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense." USSG § 2A6.2, cmt. n. 3.

As the Government indicated, in *United States v. Robinson*, 433 F.3d 31, 37 (1st Cir. 2005), the court stated "[t]he challenge is to identify a pattern of activity that fits the guideline description, and to determine whether the offense 'involves' that pattern. Robinson's persistent abuse of his wife, consisting of at least the two incidents of assault and the sending of multiple threatening letters, constitutes the proscribed pattern of activity." In Robinson, it clearly identified assault what appears to be separate conduct. The problem with the Government's argument is by that test the enhancement would apply in all multiple communication stalking cases. The wording of the enhancement provides to definitions or distinguishing characteristics.

Again, on page 2 of the offer of proof are the elements that the Government said it could prove through conduct and then identified the conduct (D.C. Doc 5.) The first element is not at issue. The second element contains the same generic language that Wu had to act "with the intent to harass, intimidate. . . .". Finally, the third element required, inter alia, a course of conduct. The conduct the Government relied upon in the offer covers the same period conduct that the PSR now seeks to enhance. Therefore, where the Government has done an Offer of Proof for conduct to establish and clearly establish the time period and conduct relied upon, it cannot go back to the well and say your guilty and now there is a

greater punishment. That is by definition double counting. "Double counting occurs when the judge applies an enhancement in the adjustments section of the guidelines for conduct already accounted for either in the definition of the offense, in a specific offense characteristic enhancement, or in the defendant's criminal history." Gary Swearingen, *Proportionality and Punishment: Double Counting under the Federal Sentencing Guidelines* 68 Wash. 3 Law Rev. pgs. 717-18 (1993) Even if the court denies the objection, it is extremely important to final conclusion to see how thin the Government's case becomes for custodial and should be considered for the defense's overall argument.

Defense Objection 5: The Government has conceded in its Sentencing Memorandum that the three-level enhancement does not apply and in addition Wu should receive a further two-level reduction under § 4C1.1 as a zero-point offender. This would bring Wu's total offense level to 15. Because of these concessions, the defense so stipulates and therefore withdraws it objection except as to offense level because of objection 4.

Defense Objection 6 partially withdraw: Defense stipulates to all restitution listed in the Government's Sentencing Memorandum except for attorney fees. In regard to attorney fees, Defense only received Exhibit A today with the government's modification. The defense would stipulate to footnote 3 for the purposes of its objection to reduce the block billing. In other words, in Exhibit A sometimes attorney fees are at $375.00 per hour and sometimes at $325.00 per hour. Paralegals at this firm sometimes bill at $95 per hour and sometimes at $120.00 per hour. The government has went through what seems to be a line item

veto and the retainer agreement was never provided in this case. Most of the legal services rendered in this matter are offered for free in Gallatin County and in every jurisdiction in the State at taxpayer expense. Order of Protections are Ex Parte Applications initially that are easily granted. This law firm seeks to get a bill that is routinely hirer than what a CJA Panel Attorney might make for representation of a defendant on all matters. In other words, more complex law, more demanding, and is only paid $175 per hour. This firm is drafting petitions. There are free pro se forms with someone to help you fill this out. There also seemed to be disproportionate calls for next steps and strategies that lasted hours.

This is how long it takes. You file a Petition for Order of Protection, it is an Ex Parte to the Court and courts rubber stamp these. A hearing will be set in twenty-one days and if Respondent does not show up, it will be granted which is what happened here.

The United States position on restitutin seems to support defense's argument for the probationary sentence; namely, "[t]he United States asks that the Court order Wu to pay his restitution at a rate that will grow proportionately with his income following the completion of his education and his entry into the professional world." The United States is asking for a guideline sentence that would put him prison, end his education, and defeat this argument so in the spirit of what the Government seeks, defense proposes that in addition to its line item veto it imposed, the court eliminate all paralegal time, and reduce the hourly rate to that of a CJA panel member on the grounds: (1) legal services were unnecessary and these same services are offered for free at taxpayer expense for this specific

reason; and  (2) the complexity and difficult of these legal issues are rudimentary at best and fall far below the legal work CJA panel members have to do for $175 per hour. Under this reduction along with the line items presented by the government defense would stipulate but needs time to recalculate at the $175 rate.

In conclusion, based on the prior objections and concessions by the Government the issue is only whether Mr. Wu's offense level 15 or 13 depending on objection 4. This was more significant when guidelines were mandatory as the difference is Offense Level 13 is in Zone C with a guideline range of 12 to 18 months while Level 15 is in Zone D with a guideline ranger of 18 to 24 months. Nevertheless, the top of one and the bottom of the suggest supervised release is appropriate.

## MEMORANDUM OF RELEVANT LAW

A substantively reasonable sentence is one that is 'sufficient, but not greater than necessary' to accomplish § 3553(a)(2)'s sentencing goals. *U.S. v. Ressam*, 679 F.3d 1069, 1089 (9th Cir. 2012) (en banc) (citing *U.S. v. Crowe*, 563 F.3d 969, 977 n. 16 (9th Cir. 2009)).

The statutory purposes of sentencing include the need for the sentence to reflect the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the sentencing guidelines, and the need to avoid unwarranted sentencing disparities among defendants. 18 U.S.C. § 3553(a)(1), (3), (4), and (6).

In imposing a sufficient but not greater than necessary sentence, courts

must also consider the factors outlined in 18 U.S.C. § 3553(a)(2).

## DEFENDANT'S SENTENCING RECOMMENDATION

1.<u>History and Characteristics of Mr. Wu</u>

Rex Wu, Jr. is a 24-year-old that was born and raised in Chicago. He is currently enrolled in college at IIT-Wright Engineering and been accepted into the pathway for Illinois Tech. He is trying to finish his degree that was started at Montana State University. Additionally, he is engaged in therapy with turning point behavioral and started addressing issues in September. Neither of this information is noted in the PSR. At the time this offense, Universities and Colleges were struggling with COVID. Wu was in a leadership position as the President of the Chinese Cultural Club. Wu also has an autistic brother that lives at home and Wu has consistently volunteered with programs that help people with autism. Although not officially diagnosed himself, one does not have to be a profession to see that Mr. Wu most likely is on the spectrum which he understands. Based on family perspective, he was never diagnosed. He has no criminal history. It is extremely enlightening to see how he cares for his brother and probably played a significant role in his misguided activism that in fact ended up hurting someone.

The impacts on society and institutions are still being studied from COVID. Some early research indicates there was an "increasing trend of suicide among college students during the pandemic, warranting emergency services . . . ." While other studies show a "higher frequency of depressive symptoms, anxiety symptoms, perceived stress and suicidal thoughts." See Mental health consequences of COVID-19 pandemic among college students and coping approaches adapted by higher education institutions: A scoping review - PMC. Regardless of the studies, there was the United States before COVID and after. And most reasonable people

would concede mistakes were made and these mistakes disproportionately impacted young people like Mr. Wu. Even more so for Chinese citizens such as Mr. Wu. For example, The President of the United States routinely referred to it as the China Virus. Naturally, young people pick up on that from leaders.

Since these incidents occurred, Mr. Wu has taken full responsibility and admitted what he did. He recognizes he hurt people that he wanted to help. He had no other violations of law and remained law abiding, he waived grand jury, he plead guilty, and he continues to volunteer and pursue his education. He has had no pretrial violations and engaged in behavioral health. He wants the ability to pay restitution to help the victim move on with her life and ensure her she is safe and that he is sorry for extremely misguided decisions.

2. <u>Nature and Circumstances of Offense</u>

Wu was approached by a friend who would later be the target of the Cyber Stalking. Wu was approached in his role as the President of the Chinese Cultural Club. Where in confidence, it was disclosed to him about discrimination that was occurring from other institutions on campus such as sororities. Members were referring to COVID as the China virus. Wu thought the University was not doing enough, so sadly he created a plan to try and raise attention to minority groups and there situations that were being subjected to what he perceived as harassment. Sadly, Mr. Wu engaged in a wrong to try and correct a wrong. The result was that he too to subjected these people to harassment as well. Wu got exactly what he wanted as law enforcement became involved. It raised attention but that attention would be on him. It is clear from the offer of proof that Wu was creating communications that more likely than not would have been associated with

someone clearly not Chinese. What race or ethnicity is not entirely clear but Wu clearly hid his identity to acted as a bigot, supremacist, and a bully. Why Mr. Wu took it so far and how he thought this was going to help may never be fully known. The evidence suggests his protective nature of his brother with autism and desire to protect led to a decision that was contrary to his natural beliefs. Wu would normally want to advocated for Chinese and people in the LGBQ community when in the end he did the opposite.

### 3. 3553(a)(2) Factors

The 3553(a)(2) factors allow for leniency while taking into account the seriousness of Mr. Wu's conduct. The need to reflect the seriousness of the offense, promote respect for the law, protect the public, and provide just punishment for Wu's criminal conduct can be accomplished with a non-custodial sentence.

The Court can craft a sentence that contemplates these factors while accounting for the work Wu has put into rehabilitating himself and remained law abiding. Everyone thinks there case is unique, but this case actually unique. A pretend racist to raise awareness for a group he wants to protect but didn't consider the harm. Wu has demonstrated through his behavior on pretrial and since this investigation started his ability to remain law abiding. He has maintained good works while pursuing an education that hopefully one day will not only benefit himself but society. The victim was clearly impacted as anyone would be in this case; but unlike other scenarios moving forward is different. No one can discount what those communications did to impact the victim but unlike other victims when the motive is known there should not be long term concern for safety and therefore

less of need for incarceration.

4.  <u>Sentencing Guidelines</u>

It depends on the Court's finding to defense's objection 4 to double counting. If the court rules in defense's favor, Offense Level 13 is in Zone C with a guideline range of 12 to 18 months. If it denies the objection, Wu's Offense Level 15 is in Zone D with a guideline ranger of 18 to 24 months. Wu is eligible for the zero point offender adjustment. U.S.S.G. §§ 5C1.2 and 4C1.1 which is taken into account both calculations.

5.  <u>Sentence Disparities among Defendants</u>

The sentence imposed must avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

The Judicial Sentencing Information addendum to the PSR is not helpful here because the references were for cases at offense level 20.

Wu recognizes that his request for a non-custodial sentence raises the question of sentence disparity. District Courts elsewhere have sentenced defendants convicted of the same or similar crimes to either time served sentences or straight supervised release.

In *U.S. v. Loren M. Okamura*, the District Court in Utah's Northern Division sentenced the defendant to three years supervised release. CR-00100-001 CW. Okamura's case was substantially greater than Wu's case. Okamura initially faced a multi-count Indictment including Interstate Threats and Transportation to Engage in Prostitution. Here, Wu had a single count and has no criminal history.

Similarly, in *U.S. v. Chauncey Hollingberry*, District Court for the District of Arizona sentenced Mr. Hollingberry to five (5) years of supervised release. CR-20-00673-001-PHX-MTL. Hollingberry did, however, have pretrial detention in that case but that actually suggests a worse case scenario considering Mr. Wu was not detained.

Both these cases involve defendants engaging in similar, or substantially worse conduct as Mr. Wu. In Okamura, it was reported that police went 80 times, that is right 80 times, to the victims house from November 2018 to 2019. www.sltrib.com/news/2021/05/13/hawaii-man-sentenced. In the same case, it was reported that Okamura had sent over 500 people to the victims house for unwanted services ranging form food deliveries to prostitution. Again, there is nothing like that in this case. Okamura was substantially older at 45. One email said "sleep with one eye open and keep looking over her should." Id. Nevertheless, he was given supervised release. This case is a far cry from the reports Okamura. There is nothing comparable in this case.

## CONCLUSION

Wu is now 24 years old. Then he was 22 years old and tried to be a leader and failed miserably. The means he took to try and correct a perceived wrong were inherently wrong themselves and he recognizes that. He will be a felon for life and defense proposal for three years supervised release will include restricted internet access. This will also allow him to pay restitution which the government took into account in its restitution request. He has no prior criminal history, no pretrial violations, accepted accountability and has now reenrolled in

school and seeing a therapist.

Before this incident and after this incident Wu continued to volunteer helping people with autism. Wu hurt someone and he demonstrated that misguided means do not lead to legitimate ends. While his intent was not hate motivated and the vulgarity and lengths he went to no doubt impacted the victim in this case; hopefully, with the motive revealed, it gives the victim long term security and eases any fears. Additionally, three years of supervision in your mid twenties after changing schools and incurring substantial debt is a harsh punishment. Making Mr. Wu a felon for life will have lifetime consequences but here a supervised release sentence of three years is more consistent with a sentence sufficient, but not greater than necessary to accomplish § 3553(a)(2)'s sentencing goals. It reflects the seriousness of this offense, promotes respect for law, provides for just punishment, and there is no real indication for protection for public at large because he is otherwise been law abiding. It is not an excuse but being in college during COVID as a Chinese American is something few of will experience. Unfortunately, Mr. Wu and the victim in this case did. A non custodial sentence is appropriate given the age and circumstance of this case.


DATED this 10th day of December, 2025.

/s/ David M. Maldonado
David M. Maldonado
Attorney for Defendant


DEFENDANT'S SENTENCING MEMORANDUM - 13

JOHN W. HUBER, United States Attorney (#7226)
JAMIE THOMAS, Assistant United States Attorney (#9420)
KARIN M. FOJTIK, Assistant United States Attorney (#7527)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682



FILED
U.S. DISTRICT COURT

2019 OCT -2  A 10: 51

DISTRICT OF UTAH

SEALED

DEPUTY CLERK

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, NORTHERN DIVISION

| UNITED STATES OF AMERICA, | **INDICTMENT** |
|---|---|
| Plaintiff, | VIOS: Counts 1 and 2, 18 U.S.C. § 2261A(2) (Cyberstalking); Count 3, 18 U.S.C. § 875(c) (Interstate Threats); Counts 4 and 5, 18 U.S.C. § 2421(a) (Transportation for Prostitution) |
| vs. | |
| LOREN M. OKAMURA, | |
| Defendant. | Case: 1:19-cr-00100 Assigned To : Waddoups, Clark Assign. Date : 10/2/2019 Description: |

The Grand Jury Charges:

### COUNT 1
Cyberstalking
(18 U.S.C. § 2261A(2))

Beginning on a date unknown in 2018 and continuing through August, 2019, in

the Northern Division of the District of Utah,

LOREN M. OKAMURA,

with the intent to injure, harass, and cause substantial emotional distress to a person in

another state, namely, Utah, used facilities of interstate or foreign commerce, including

mobile phone applications and other forms of electronic communication, to engage in a

course of conduct that caused substantial emotional distress to the victim, Person A, and

placed Person A in reasonable fear of death or serious bodily injury; or attempted to do

so, all in violation of 18 U.S.C. § 2261A(2).

## COUNT 2
Cyberstalking
(18 U.S.C. § 2261A(2))

Beginning on a date unknown in 2018 and continuing through August, 2019, in

the Northern Division of the District of Utah,

### LOREN M. OKAMURA,

with the intent to injure, harass, and cause substantial emotional distress to a person in

another state, namely, Utah, used facilities of interstate or foreign commerce, including

mobile phone applications and other forms of electronic communication, to engage in a

course of conduct that caused substantial emotional distress to the victim, Person B; or

attempted to do so, all in violation of 18 U.S.C. § 2261A(2).

## COUNT 3
Interstate Threats
(18 U.S.C. § 875(c))

In May 2019, in the Northern Division of the District of Utah,

### LOREN M. OKAMURA,

knowingly and willfully did transmit in interstate and foreign commerce from the State of

Hawaii to the State of Utah, a communication to Person A to, cause injury to Person A

and Person A's family, the communication contained a threat to injure Person A,

2

specifically that Person A should, "sleep with one eye open and keep looking over your

shoulder you crazy bitch we are coming for you and your dumbass daddy and crazy ass

mommy." The communication further stated, "You should just kill yourself and do your

family a favor already;" and attempted to do so, all in violation of 18 U.S.C. § 875(c).


## COUNT 4
Transportation of Individual to Engage in in Prostitution
(18 U.S.C. § 2421(a))

In June 2018, in the Northern Division of the District of Utah,

### LOREN M. OKAMURA,

knowingly transported Person A in interstate commerce, from Utah to Hawaii, with the

intent that Person A engage in prostitution and sexual activity for which a person may be

charged with a criminal offense, and aided and abetted such conduct, and attempted to do

so, all in violation of 18 U.S.C. § 2421.


## COUNT 5
Transportation of Individual to Engage in in Prostitution
(18 U.S.C. § 2421(a))

In July 2018, in the Northern Division of the District of Utah,

### LOREN M. OKAMURA,

knowingly transported Person A in interstate commerce, from Utah to Hawaii, with the

intent that Person A engage in prostitution and sexual activity for which a person may be

charged with a criminal offense, and aided and abetted such conduct, and attempted to do

//

so, all in violation of 18 U.S.C. § 2421.

A TRUE BILL:

_____
FOREPERSON OF GRAND JURY

JOHN W. HUBER
United States Attorney

_Jamie Thomas_
_____
KARIN M. FOJTIK
JAMIE Z. THOMAS
Assistant United States Attorneys

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 1

# UNITED STATES DISTRICT COURT

District of Utah

| | |
|---|---|
| UNITED STATES OF AMERICA | ) **JUDGMENT IN A CRIMINAL CASE** |
| v. | ) |
| LOREN M. OKAMURA | ) Case Number: DUTX 1:19-CR-00100-001 CW |
| | ) USM Number: 11889-122 |
| | ) Vanessa Ramos, Wojciech Nitecki |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    2 of the Indictment

☐ pleaded nolo contendere to count(s)
  which was accepted by the court.

☐ was found guilty on count(s)
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 2261(A)(2) | Cyberstalking | | 2 |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)  1, 3, 4, 5                        ☐ is  ☑ are dismissed on the motion of the United States.

    It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

                                      5/13/2021

Date of Imposition of Judgment

Signature of Judge

        Clark Waddoups, U.S. District Judge

Name and Title of Judge

                  5/14/2021

Date

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page    **2**    of    **7**

DEFENDANT:   LOREN M. OKAMURA
CASE NUMBER:   DUTX 1:19-CR-00100-001 CW

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Time served.

☐ The court makes the following recommendations to the Bureau of Prisons:

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

     ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

     ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐ before 2 p.m. on _____ .

     ☐ as notified by the United States Marshal.

     ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/19) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page **3** of **7**

DEFENDANT: LOREN M. OKAMURA
CASE NUMBER: DUTX 1:19-CR-00100-001 CW

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

 36 months.

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you
       pose a low risk of future substance abuse. *(check if applicable)*
4. ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | Judgment—Page | 4 | of | 7 |
|---|---|---|---|---|

DEFENDANT: LOREN M. OKAMURA
CASE NUMBER: DUTX 1:19-CR-00100-001 CW

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.
14. You must submit your person, residence, office or vehicle to search, conducted by the probation office at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; you must warn any other residents that the premises may be subject to searches pursuant to this condition.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   _____   _____   Date _____   _____

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3D — Supervised Release

DEFENDANT: LOREN M. OKAMURA
CASE NUMBER: DUTX 1:19-CR-00100-001 CW

Judgment—Page    5    of    7

## SPECIAL CONDITIONS OF SUPERVISION

1. You must complete 20 hours of community service per week until you are gainfully employed, fulltime (at least 30 hours per week). Should you not be employed full-time with 90 days of sentencing, your community service hours will increase to 32 hours per week, until you are gainfully employed, full-time.

2. You must submit to drug/alcohol testing, under a copayment plan, as directed by the U.S. Probation Office.

3. You must participate in and successfully complete a substance-abuse evaluation and/or treatment, under a copayment plan, as directed by the U.S. Probation Office. During the course of treatment, you must not consume alcohol, nor frequent any establishment where alcohol is the chief item of order.

4. You shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing, which is required as a condition of supervision.

5. You must participate in and successfully complete a mental-health treatment program, under a copayment plan, as directed by the U.S. Probation Office, take any mental-health medications as prescribed, and not possess or consume alcohol, nor frequent businesses where alcohol is the chief item of order, during the course of treatment or medication.

6. You must not engage in any form of gambling (including, but not limited to, lotteries, online wagering, and sports betting) and you must not enter any casino or other establishment where gambling is the primary purpose (such as horse race tracks, off-track betting establishments, and cock fights).

7. You must not possess and/or use computers (as identified in 18 USC 1030 (e)(1)), or other electronic communications or data storage devices or media, without the prior approval of the probation officer.

8. You must discuss and comply with instructions given to him by U.S. Probation as to limiting internet access.

9. You must inform all parties who access approved computer(s) or similar electronic device(s) that the device(s) is subject to search and monitoring. You may be limited to possessing only one personal computer and/or internet capable device to facilitate the ability to effectively monitor your internet-related activities.

11. You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030 (e)(1)), other electronic communications or storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to a search may be grounds for revocation. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. The probation officer may conduct a search under this condition only when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

| | Judgment — Page | 6 | of | 7 |

DEFENDANT: LOREN M. OKAMURA
CASE NUMBER: DUTX 1:19-CR-00100-001 CW

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Restitution** | **Fine** | **AVAA Assessment*** | **JVTA Assessment**** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss****** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
| | | | |

| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

    ☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
                        Sheet 6 — Schedule of Payments

DEFENDANT:  LOREN M. OKAMURA
CASE NUMBER:  DUTX 1:19-CR-00100-001 CW

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $  100.00         due immediately, balance due

    ☐  not later than                     , or
    ☐  in accordance with  ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with    ☐ C,    ☐ D, or    ☐ F below); or

**C**  ☐  Payment in equal                 *(e.g., weekly, monthly, quarterly)* installments of $         over a period of
              *(e.g., months or years)*, to commence            *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal                 *(e.g., weekly, monthly, quarterly)* installments of $         over a period of
              *(e.g., months or years)*, to commence            *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within            *(e.g., 30 or 60 days)* after release from
    imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during
the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate
Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment,
(5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of
prosecution and court costs.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **United States of America** | **JUDGMENT IN A CRIMINAL CASE** |
| v. | (For Offenses Committed On or After November 1, 1987) |
| **Chauncey Hollingberry** | **No. CR-20-00673-001-PHX-MTL** |
| | Philip A. Seplow (CJA) |
| | Attorney for Defendant |

USM#: 35677-508

**THE DEFENDANT ENTERED A PLEA OF** guilty on 5/19/2022 to Count 1 of the Indictment.

**ACCORDINGLY, THE COURT HAS ADJUDICATED THAT THE DEFENDANT IS GUILTY OF THE FOLLOWING OFFENSE(S):** violating 18 U.S.C §2261A(2), Cyberstalking, a Class D Felony offense, as charged in Count 1 of the Indictment.

**IT IS THE JUDGMENT OF THIS COURT THAT** the defendant is hereby placed on **PROBATION** for a term of **SIXTY (60) MONTHS**. The defendant shall report to the probation office within 72 hours of sentencing.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay to the Clerk the following total criminal monetary penalties:

**SPECIAL ASSESSMENT:** $100.00     **FINE:** WAIVED     **RESTITUTION:** N/A

The Court finds the defendant does not have the ability to pay a fine and orders the fine waived.

The defendant shall pay a special assessment of $100.00 which shall be due immediately.

The defendant shall pay a total of $100.00 in criminal monetary penalties, due immediately. Having assessed the defendant's ability to pay, payments of the total criminal monetary penalties are due as follows: Balance is due in equal monthly installments of $25.00 over a period of four months to commence 60 days after the date of this judgment.

If incarcerated, payment of criminal monetary penalties are due during imprisonment at a rate of not less than $25 per quarter and payment shall be made through the Bureau of Prisons' Inmate Financial Responsibility Program. Criminal monetary payments shall be made to the Clerk of U.S. District Court, Attention: Finance, Suite 130, 401 West Washington Street, SPC 1, Phoenix, Arizona 85003-2118. Payments should be credited to the various monetary penalties imposed by the Court in the priority established under 18 U.S.C. § 3612(c). The total special assessment of $100.00 shall be paid pursuant to Title 18, United States Code, Section 3013 for Count 1 of the Indictment.

Case 2:20-cr-00673-MTL   Document 127   Filed 12/10/21   Page 26 of 29

CR-20-00673-001-PHX-MTL                                                    Page 2 of 5
USA vs. Chauncey Hollingberry

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, (10) costs, including cost of prosecution and court costs.

Any unpaid balance shall become a condition of supervision and shall be paid within 90 days prior to the expiration of supervision. Until all restitutions, fines, special assessments and costs are fully paid, the defendant shall immediately notify the Clerk, U.S. District Court, of any change in name and address. The Court hereby waives the imposition of interest and penalties on any unpaid balances.

## PROBATION

The drug testing condition is suspended based on the Court's determination that the defendant poses a low risk of future substance abuse.

It is ordered that while on probation, the defendant must comply with the mandatory and standard conditions of supervision as adopted by this court, in General Order 17-18, which incorporates the requirements of USSG §§ 5B1.3 and 5D1.2. Of particular importance, the defendant must not commit another federal, state, or local crime during the term of supervision. Within 72 hours of sentencing or release from the custody of the Bureau of Prisons the defendant must report in person to the Probation Office in the district to which the defendant is released. The defendant must comply with the following conditions:

## MANDATORY CONDITIONS

1)      You must not commit another federal, state or local crime.
2)      You must not unlawfully possess a controlled substance. The use or possession of marijuana, even with a physician's certification, is not permitted.
3)      You must refrain from any unlawful use of a controlled substance. The use or possession of marijuana, even with a physician's certification, is not permitted. Unless suspended by the Court, you must submit to one drug test within 15 days of placement on probation and at least two periodic drug tests thereafter, as determined by the court.

## STANDARD CONDITIONS

1)      You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of sentencing or your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2)      After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3)      You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4)      You must answer truthfully the questions asked by your probation officer.

CR-20-00673-001-PHX-MTL

Page 3 of 5

USA vs. Chauncey Hollingberry

5)    You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

6)    You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.

7)    You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

8)    You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.

9)    If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

10)    You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

11)    You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12)    If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

13)    You must follow the instructions of the probation officer related to the conditions of supervision.

## SPECIAL CONDITIONS

The following special conditions are in addition to the conditions of probation or supersede any related standard condition:

1)    You must cooperate in the collection of DNA as directed by the probation officer.

CR-20-00673-001-PHX-MTL
USA vs. Chauncey Hollingberry

Page 4 of 5

2) You must not have direct or indirect contact with the following, C.K., C.C., M.S., J.M., or L.R. and the probation officer will verify compliance. Prohibition on contact with C. C. applies unless otherwise permitted by the probation office in the context of civil litigation.

3) You must not go into any government building unless you have legitimate business or without prior authorization from your probation officer.

4) You must not utilize, by any means, any social networking forums offering an interactive, user-submitted network of friends, personal profiles, blogs, chat rooms or other environment which allows for interaction with others without prior written permission from the probation officer

5) You must not access the Internet except for reasons approved in advance by the probation officer.

6) You must consent, at the direction of the probation officer, to having installed on your computer(s) (as defined at 18 U.S.C. § 1030(e)(1), including internet capable devices), at your own expense, any hardware or software systems to monitor your computer use.

7) You must submit your computers (as defined in 18 U.S.C. § 1030(e)(1)) or other electronic communications or data storage devices or media, to a search. You must warn any other people who use these computers or devices capable of accessing the Internet that the devices may be subject to searches pursuant to this condition. Failure to submit to a search may be ground for revocation of release. A probation officer may conduct a search pursuant to this condition only when reasonable suspicion exists that there is a violation of a condition of supervision and that the computer or device contains evidence of this violation. You must consent to and cooperate with the seizure and removal of any hardware and/or data storage media for further analysis by law enforcement or the probation officer with reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct. Any search will be conducted at a reasonable time and in a reasonable manner.

8) You must participate in a mental health assessment and participate in mental health treatment as determined to be necessary by a medical or mental health professional and follow any treatment directions by the treatment provider. You must take medicine as prescribed by a medical professional providing mental health treatment, unless you object, in which event you must immediately notify the probation officer. You must contribute to the cost of treatment in an amount to be determined by the probation officer.

9) You must submit your person, property, house, residence, vehicle, papers, or office to a search conducted by a probation officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition.

10) You must make your best effort to removal from the Internet any and all publicly available information you posted regarding C. K. This shall include removing all social media, YouTube, and other internet videos and/or posts by the defendant about or referencing the victim as well as any images or videos of the victim. You shall permanently delete all images and videos of the

CR-20-00673-001-PHX-MTL
USA vs. Chauncey Hollingberry

Page 5 of 5

    victim in your possession.  These actions will be completed within 30 days of the date of entry of judgment in this matter.

**THE COURT FINDS** that you have been sentenced in accordance with the terms of the plea agreement and that you have waived your right to appeal and to collaterally attack this matter. The waiver has been knowingly and voluntarily made with a factual basis and with an understanding of the consequences of the waiver.

The Court may change the conditions of probation or supervised release or extend the term of supervision, if less than the authorized maximum, at any time during the period of probation or supervised release.  The Court may issue a warrant and revoke the original or any subsequent sentence for a violation occurring during the period of probation or supervised release.

Date of Imposition of Sentence: **Thursday, August 18, 2022**

Dated this 19th day of August, 2022.

*Michael T. Liburdi*

Michael T. Liburdi
United States District Judge

**RETURN**

I have executed this Judgment as follows:

defendant delivered on _____ to _____ at _____ , the institution

designated by the Bureau of Prisons with a certified copy of this judgment in a Criminal case.

United States Marshal

By: _____  Deputy Marshal

CR-20-00673-001-PHX-MTL- Hollingberry 8/18/2022 - 4:46 PM